**SOUTHERN NEW JERSEY NEWSPAPERS, INC., a corporation of the State of New Jersey, Plaintiff,**

v.

**STATE OF NEW JERSEY DEPARTMENT OF TRANSPORTATION, Oliver D. Kee and George J. Tanger, Defendants.**

**WOODBURY DAILY TIMES COMPANY, INC., a corporation of the State of New Jersey t/a the Gloucester County Times, Plaintiff,**

v.

**The STATE OF NEW JERSEY, Department of Transportation, Louis J. Gambaccini, Commissioner of the Department of Transportation, Oliver D. Kee, and George J. Tanger, Defendants.**

Civ. A. Nos. 81–174, 81–175.

United States District Court, D. New Jersey.

Jan. 29, 1982.

Robert T. Lehman, Archer, Greiner & Read, Haddonfield, N. J., for Southern New Jersey Newspapers, Inc.

Thomas H. Ward, Woodbury, N. J., for Woodbury Daily Times Company, Inc.

Irwin I. Kimmelman, Atty. Gen. of N. J. by Patricia D. Connelly, Deputy Atty. Gen., State of N. J., Dept. of Transp., Trenton, N. J., for defendants.

BROTMAN, District Judge.

In this case, the court is faced with a confrontation between a newspaper's exercise of its First Amendment rights and a state's exercise of its police power. Plaintiff Southern New Jersey Newspapers, Inc., and plaintiff Woodbury Daily Times Company, Inc., contemporaneously instituted civil rights actions seeking injunctive and declaratory relief pursuant to 42 U.S.C. § 1983 [1] and 28 U.S.C. § 2201,[2] respectively. Through these actions, plaintiffs have sought to prevent defendants from relying

---

1. 42 U.S.C. § 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. 28 U.S.C. § 2201 provides that:

In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

on and applying N.J.S.A. 27:7A–11 et seq. [3] and N.J.S.A. 27:5–1 et seq. [4] to remove plaintiffs' newspaper honor boxes [5] from New Jersey State Highway rights-of-way. [6] Jurisdiction of this court is grounded upon 28 U.S.C. § 1343(3). [7]

Motions for temporary restraining orders were granted and, on February 26, 1981, a hearing was held to determine whether or not plaintiffs' motions for preliminary injunctions should be granted. At the close of the hearing, the court ordered the restraints to remain in effect pending its decision. On June 29, 1981, the court, with the agreement of all parties, entered two orders: (1) consolidating the two actions, pursuant to Fed.R.Civ.P. 42(a); and (2) advancing and consolidating the trial of the action on the merits with the hearing of the applications for preliminary injunctions, pursuant to Fed.R.Civ.P. 65(a). [8] In accordance with Fed.R.Civ.P. 52, the court makes the following findings of fact and conclusions of law.

3. N.J.S.A. 27:7A–13 provides:

> No roadside signs shall be erected or maintained within the right-of-way of any portion of the Interstate and Primary Systems within this State, except that this prohibition shall not apply to signs, public notices, or markers, erected or maintained by the Department of Transportation, or the signs erected or maintained at the "informational sites" designated by the Commissioner of Transportation pursuant to section 8 of this act.

4. N.J.S.A. 27:5–1 provides:

> Whoever shall paint or place upon, or in any manner affix to, a fence, structure, pole, rock, tree or other object which is the property of another, whether within or without the limits of a public highway, or maintain thereon any words, device, trademark, advertisement or notice not required by law to be posted thereon, without first obtaining the consent in writing of the owner or tenant of the property, or of the body having control of the highway if placed on a highway, shall upon complaint of the owner or tenant, or of any police officer or other person, be liable to a penalty of twenty-five dollars ($25.00) upon conviction in the municipal court of the municipality wherein the violation occurred. If consent is obtained that fact shall be stated on the advertisement or notice.
>
> This chapter shall not apply to cautionary signals or signs, or directional signs or notices erected on or along a highway by the body having control thereof or by its consent.

## FINDINGS OF FACT

1. Plaintiff Southern New Jersey Newspapers, Inc. is a corporation of the State of New Jersey, having its principal place of business on Cuthbert Boulevard, Cherry Hill, New Jersey, and is the publisher of a newspaper known as the "Courier-Post."

2. Plaintiff Woodbury Daily Times Company, Inc. is a corporation of the State of New Jersey, having its principal place of business at Parkway Avenue, Trenton, New Jersey, and is the publisher of a newspaper known as the "Gloucester County Times."

3. Defendant State of New Jersey Department of Transportation is a department of the government of the State of New Jersey having responsibility for certain streets, roads, and highways within the State of New Jersey.

4. Defendant Louis J. Gambaccini is the Commissioner of the New Jersey Department of Transportation.

5. An "honor box" is the vending machine from which single copies of a newspaper may be purchased.

6. "The term 'right of way' means the total width of the property owned by the state. Right of way . . . varies from road to road and, in many cases, from one section of the road to another. It does not refer to the roadway itself or the distance between curbs." This definition is taken from an open letter, dated April 1980, from Louis J. Gambaccini, Commissioner New Jersey Department of Transportation, contained in a document entitled "A Guide To Posting Signs Along New Jersey Roads," which was attached to plaintiff Southern New Jersey Newspapers, Inc.'s Brief Supplementing Verified Complaint and Verified Affidavit.

7. 28 U.S.C. § 1343(3) grants to the District Courts original jurisdiction "to redress the deprivation under color of any state law, statute, ordinance, regulation, custom or usage of any right, privilege or immunity secured by the Constitution of the United States. . . ."

8. At the request of defendants, and without opposition from plaintiffs, the affidavit of Norman Deitch (the Supervising Engineer of Traffic, Bureau of Traffic Engineering, New Jersey Department of Transportation) which was submitted by defendants in support of their Brief in Opposition to Motion for Preliminary Injunction was made part of the trial record.

5. Defendant Oliver D. Kee is the regional maintenance engineer for Region 4 of the State of New Jersey Department of Transportation, and at all times relevant hereto has been its agent and employee.

6. Defendant George J. Tanger is the Regional Sign Coordinator for the State of New Jersey Department of Transportation and at all times relevant hereto has acted as its agent and employee.

7. Both the Courier Post and the Gloucester County Times are distributed through two methods: home delivery and single copy sales. Single copy sales are necessary since all persons do not desire home delivery.

8. One method of distributing single copies is through coin operated vending machines which are known in the newspaper business as "honor boxes." An honor box, as the term is used here, is a metal machine, or box, approximately four feet high by twenty inches wide by ten inches deep which is constructed to permit the placing of concrete or some other heavy object in it for stabilization. The box may exist free standing or it may be strapped or chained to a utility pole or other standing objects.

9. An honor box permits the purchase of a newspaper on a twenty-four hour per day basis and is often utilized at locations that could not sustain a newsstand or a newsboy. The honor boxes are intended to serve pedestrians and are placed on or near sidewalks where there is heavy pedestrian traffic, usually in the area of restaurants or bus stops. It is necessary that an honor box sell, on average, between five to ten newspapers on a daily basis to be economical.

10. Honor boxes have been used in the distribution of newspapers in Southern New Jersey for at least thirty (30) years. Plaintiff Southern New Jersey currently utilizes approximately 560 boxes. Approximately 6,200 newspapers, or 27% of the Courier Post's 23,000 daily single copy sales, are sold through honor boxes. Of Sunday newspaper sales, 4,200 papers, or about 22% of the 19,000 single copy sales, are sold through the boxes. Honor boxes are particularly significant to Sunday sales since many of the single copy store outlets are closed on that day.

11. The Gloucester County Times has approximately eighty (80) honor boxes currently in use.

12. On or about December 16, 1980, defendant State of New Jersey Department of Transportation through its agent, defendant Oliver D. Kee, Regional Maintenance Engineer, Region 4, notified both plaintiffs by letters that their honor boxes located along New Jersey State Highways in Southern New Jersey were in direct violation of N.J.S.A. 27:7A–11 *et seq.* and N.J.S.A. 27:5–1. As to N.J.S.A. 27:7A–11 *et seq.*, the letters made specific reference to a prohibition against placement on or overhanging the State Highway right-of-way. The letters further indicated that if the honor boxes were not removed or relocated within thirty (30) days, they would be confiscated and stored and plaintiffs would be billed $50.00, or double the cost of removal.

13. Although the letters did not specify the allegedly violative boxes, it has subsequently been disclosed that approximately eighteen (18) honor boxes of plaintiff Southern New Jersey and three (3) of plaintiff Woodbury Daily Times are located on the State Highway rights-of-way and are asserted to be illegally placed. Defendant Department of Transportation demands that the subject boxes be located off of the State's right-of-way.

14. The honor boxes in question are located either on a strip of land between a sidewalk and a curb or, where there is no strip, on a sidewalk near a curb. None of the boxes are in a street or even appear to be overhanging a curb. In addition, the opening part of the boxes typically faces away from the street. None of the boxes appears to be located in a rural area or in an area where there are no sidewalks. Most of the boxes appear to be in areas with commercial activity.

15. Each of the honor boxes in this case displays the name of the newspaper in fairly bold print on three or four of its sides. The name is visible not only to pedestrians

but to motorists who are travelling along the highway.

16. Defendants have submitted an affidavit discussing possible safety hazards of the honor boxes in the rights-of-way. This affidavit is, at best, speculative and defendants have failed to produce any evidence of a more substantive nature to support these speculations. On the other hand, plaintiffs have presented evidence that their honor boxes have not been involved in any injuries, motor vehicle accidents, or other such incidents. The amount of vandalism also has been slight. Aside from the Department of Transportation's letters, there have been no complaints received by plaintiffs regarding the use of honor boxes.

## DISCUSSION AND CONCLUSIONS OF LAW

### Abstention

 Defendants have urged the court to abstain from exercising its jurisdiction.[9] The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction has two principal bases. As the Supreme Court has explained:

There are, of course, two primary types of federal abstention. The first, usually referred to as *Pullman* abstention, involves an inquiry focused on the possibili-

ty that the state courts may interpret a challenged state statute so as to eliminate, or at least to alter materially, the constitutional question presented. *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, [61 S.Ct. 643, 85 L.Ed. 971] (1941). See *Bellotti v. Baird*, 428 U.S. 132, [96 S.Ct. 2857, 49 L.Ed.2d 844] (1976). The second type is *Younger* [*v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669] abstention, in which the court is primarily concerned in an equitable setting, with considerations of comity and federalism, both as they relate to the State's interest in pursuing an ongoing state proceeding, and as they involve the ability of the state courts to consider federal constitutional claims in that context. [Citations omitted].

*Ohio Bureau of Employment Service v. Hodory*, 431 U.S. 471, 477, 97 S.Ct. 1898, 1902, 52 L.Ed.2d 513 (1977). There are no prosecutions pending with respect to the statute at issue and, thus, the *Younger* form of abstention is not applicable. *See, e.g., Steffel v. Thompson*, 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974); *International Society For Krishna Consciousness v. Hays*, 438 F.Supp. 1077, 1080–81 (S.D.Fla. 1977); *Philadelphia News., Inc. v. Borough C., etc., Swarthmore*, 381 F.Supp. 228, 234 (E.D.Pa.1974).[10]

---

**9.** In addition to arguing that this court should abstain, defendants have moved to dismiss the complaints for failure to exhaust administrative remedies. Defendants assert that N.J.A.C. 16:41–8.12, a regulation promulgated pursuant to N.J.S.A. 27:7A–17, provides for a hearing procedure which defendants should have exhausted.

An examination of N.J.A.C. 16:41–8.12 reveals that it is not applicable to the current situation. This provision, which is entitled Notice of revocation of license or permit, allows a licensee or permittee to file a protest and to request a hearing when he has been notified that he has violated N.J.A.C. 16:41–8.11, which defines the bases for revocation of a license or permit. In the present case, plaintiffs do not hold permits or licenses and thus obviously cannot be subject to their revocation. N.J.A.C. 16:41–8.12 does not provide for an administrative hearing for persons in plaintiffs' positions. In any event, the Supreme "Court has expressly held . . . that state administrative remedies need not

be exhausted where the federal court plaintiff states an otherwise good cause of action under 42 U.S.C. § 1983." *Gibson v. Berryhill*, 411 U.S. 564, 574, 93 S.Ct. 1689, 1696, 36 L.Ed.2d 488 (1973) (citations omitted).

**10.** Although there are no pending state proceedings, plaintiffs still have satisfied the jurisdictional requirement, as imposed by Art. III of the United States Constitution and the terms of the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, of an "actual controversy." In *Steffel v. Thompson, supra*, the Supreme Court concluded that an "actual controversy" exists where the plaintiff demonstrates a genuine threat of enforcement of a disputed state statute. The Court found that, "petitioner has alleged threats of prosecution that cannot be characterized as 'imaginary or speculative.' [Citation Omitted] . . . . Moreover, petitioner's challenge is to those specific provisions of state law which have provided the basis for threats of criminal prosecution against him." *Id.* 415 U.S. at 459, 94 S.Ct. at 1216.

The defendants have not relied on *Younger*, but have asserted that *Railroad Commission v. Pullman Co., supra*, requires abstention. As noted, *Pullman* abstention is:

proper . . . where a federal constitutional claim is premised on an unsettled question of state law whose determination by the state court might avoid or modify the constitutional issue. . . . Abstention under such circumstances generally serves the dual purposes of averting unnecessary adjudication of constitutional issues and precluding needless interference with legitimate and sensitive state programs.

*McKnight v. Southeastern Pennsylvania Transportation Authority*, 583 F.2d 1229 (3rd Cir. 1978). The defendants contend that since the issue of whether or not the statutes in question (N.J.S.A. 27:5–1 and N.J.S.A. 27:7A–13) apply to plaintiffs' honor boxes is a question of interpretation of state statutes and since a determination by a state court of inapplicability would obviate the necessity for a ruling on constitutionality, abstention is called for.

In deciding whether to abstain, the court is guided by the idea that abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.

*Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976), *quoting County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959); *see McKnight, supra* at 1241.[11] The Sixth Circuit Court of Appeals has stated:

The mere fact that a constitutional decision conceivably could be avoided or that federal-state friction might arise does not automatically justify resort to the doctrine. The facts and circumstances of each case must be carefully examined in order to evaluate the policies to be served by abstention. Thus, resort to abstention is appropriate only if the narrowly limited countervailing interests are, on balance, more important to the federal constitutional system then a litigant's right to a federal forum.

*Garvin v. Rosenau*, 455 F.2d 233, 238 (6th Cir. 1972).

Upon examining the circumstances presented in this case, the court is convinced that abstention is not appropriate. In reaching this decision, the court has considered the nature of the right sought to be protected, the extent to which the state law issue is unclear, and the extent to which the values which justify abstention would be affected.[12] *See generally Kusper v. Pon-*

---

In the current case, the letter, dated December 16, 1980, from the Regional Maintenance Engineer for the New Jersey Department of Transportation adequately supports a finding of "actual controversy." The statements informing plaintiffs of the violations of specific statutes and of the impending enforcement actions cannot be characterized as "imaginary or speculative threats of prosecution for maintaining the honor boxes on the state highways' rights-of-way. *See Philadelphia News., Inc., supra*, at 235.

In addition, the fact that the statutes are not being challenged on their faces but as they are being applied to plaintiffs' honor boxes does not preclude a declaratory judgment action. *Steffel v. Thompson, supra*, 415 U.S. at 473–75, 94 S.Ct. at 1222–24; *Philadelphia News., Inc., supra*, at 235.

11. The need for the existence of " 'special circumstances,' " *Zwickler v. Koota*, 389 U.S. 241, 248, 88 S.Ct. 391, 395, 19 L.Ed.2d 444 (1967) (citation omitted), also is important since, "[a]bstention . . . inevitably gives rise to a number of adverse consequences. Relegating the parties to the state courts often results in undue delay in the resolution of the controversy and greatly increases the costs of litigation, factors that heighten the danger that valuable federal rights might be lost." *McKnight, supra*, at 1241.

12. Based on the following reasoning, the court considers it unnecessary to conduct an extensive analysis of abstention with respect to the claims involving N.J.S.A. 27:5–1. There is sufficient clarity on an issue of state law so as to obviate the need for abstention. *See Wisconsin v. Constantineau*, 400 U.S. 433, 438–39, 91 S.Ct. 507, 510–11, 27 L.Ed.2d 515 (1971).

*tikes,* 414 U.S. 51, 53–56, 94 S.Ct. 303, 305, 38 L.Ed.2d 260 (1973); *Wisconsin v. Constantineau,* 400 U.S. 433, 437–39, 91 S.Ct. 507, 510–11, 27 L.Ed.2d 515 (1971); *George v. Parratt,* 602 F.2d 818 (8th Cir. 1979); *McKnight, supra,* at 1240–42.

█ First, it is of great significance that the present case deals with alleged infringements of plaintiffs' First Amendment rights to distribute their newspapers. Federal courts have found abstention to be particularly inappropriate when First Amendment rights are at stake. *See, e.g., Spokane Arcades, Inc. v. Brockett,* 631 F.2d 135, 137 (9th Cir. 1980), *aff'd,* 454 U.S. 1022, 102 S.Ct. 557, 70 L.Ed.2d 468 (1981); *Zwickler v. Koota,* 389 U.S. 241, 252, 88 S.Ct. 391, 397, 19 L.Ed.2d 444 (1967); *Garvin v. Rosenau, supra,* at 239; *Hobbs v. Thompson,* 448 F.2d 456, 462–63 (5th Cir. 1971). When First Amendment rights are in question, any expense and delay engendered by abstention weighs even more heavily, especially as here, where defendants have threatened to stop alleged First Amendment activity.

The second factor to be considered is how unclear the challenged state law issue is. *See Wisconsin v. Constantineau, supra,* 400 U.S. at 439, 91 S.Ct. at 511; *Harman v. Forssenius,* 380 U.S. 528, 534–35, 85 S.Ct. 1177, 1181–82, 14 L.Ed.2d 50 (1965). The question before the court is whether plaintiffs' newspaper honor boxes are "roadside signs" within the meaning of N.J.S.A. 27:7A–13.[13] The present situation is unlike the potentially more difficult situation where a statute is tested purely on its face

and there has been no indication by the state as to how the provision should be interpreted. Here, there has been an attempt by an official of the New Jersey Department of Transportation to apply the statute to honor boxes. As the Supreme Court has noted, "[t]he interpretation placed on the statute by appellants . . . is of some importance and merits attention, for they are the officials charged with enforcement of the statute." *Belotti v. Baird,* 428 U.S. 132, 143, 96 S.Ct. 2857, 2864, 49 L.Ed.2d 844 (1976). *See Hamer v. Musselwhite,* 376 F.2d 479, 481 (5th Cir. 1967). Under these conditions, the court is inclined to give the official's interpretation some weight in construing the statute.

In relevant part, N.J.S.A. 27:7A–13 provides that, "[n]o roadside signs shall be erected or maintained within the right-of-way of any portion of the Interstate and Primary Systems. . . ." Roadside sign is defined in N.J.S.A. 27:7A–12(g) as

"any writing, printing, painting, display, emblem, drawing, sign, or other device whether placed on the ground, rocks, trees, treestumps or other natural structures, or on a building, structure, signboard, billboard, wallboard, roofboard, frame, support, fence, or elsewhere, and any lighting or other accessories used in conjunction therewith."

The language in this definition allows for wide coverage, and plaintiffs' honor boxes can be included in two respects. In the first, plaintiffs' boxes can be considered "structures" on which are placed the names

Although the December 16, 1980 letter from the State Department of Transportation to plaintiffs cites N.J.S.A. 27:5–1 *et seq.* as one of the bases for an enforcement action by the Department of Transportation, none of the provisions of this Chapter 5 of Title 27 authorizes the New Jersey Department of Transportation to enforce N.J.S.A. 27:5–1, the provision setting out prohibited activity. Rather, N.J.S.A. 27:5–1 *et seq.* gives the rights of enforcement to the municipalities affected, *see* N.J.S.A. 27:5–3, and to the department of state police. *See* N.J.S.A. 27:5–2. (The Department of State Police has since become the Division of State Police. See N.J.S.A. 52:17B–6 *et seq.*). Thus, defendants do not have the power to enforce

N.J.S.A. 27:5–1 against plaintiffs' honor boxes. (This is not the situation with respect to the enforcement of N.J.S.A. 27:7A–13 since N.J.S.A. 27:7A–22 authorizes the Commissioner of Transportation to prosecute any violations of N.J.S.A. 27:7A–13.). For these reasons, the court will exercise its equitable powers and enter an order enjoining defendants from attempting to enforce N.J.S.A. 27:5–1 against plaintiffs' honor boxes. Because of this disposition, the court will not adjudge whether plaintiffs' boxes are subject to N.J.S.A. 27:5–1 and, if so, whether the statute is unconstitutional as applied to plaintiffs' honor boxes.

**13.** N.J.S.A. 27:7A–13 is set out at *supra* note 3.

("writing, printing, painting, display") of the newspapers. A second way is to consider the boxes as "device[s]" which are "placed on the ground." [14]

In support of their position that N.J.S.A. 27:7A–13 does not apply to their boxes, plaintiffs argue that the purpose of the act, as set out at N.J.S.A. 27:7A–11, is to control only roadside advertising. They contend that their honor boxes do not constitute any type of advertising and thus were not intended to be covered by N.J.S.A. 27:7A–13.

Even in light of the Act's avowed purpose to control roadside advertising, the court does not construe N.J.S.A. 27:7A–13 as applying only to roadside signs which are used strictly for advertising. If this had been the legislature's intent, N.J.S.A. 27:7A–13 could have included a reference to roadside signs used solely for advertising, or the definition of roadside sign could have been written more narrowly. Finally, the presence of the newspaper's name in bold print on the sides of the honor boxes could be considered advertising as well as identification. Thus, although there may be some ambiguity as to whether N.J.S.A. 27:7A–13 should be interpreted to include plaintiffs' honor boxes, the amount of ambiguity is insufficient, by itself, to mandate abstention.

The final factor concerns the extent to which the two values underlying abstention are implicated. In this regard, the court must address the following questions: whether one possible interpretation of the state-law issue would cause needless adjudication of a federal constitutional question and whether an erroneous decision of state-law by the court would seriously interfere with a sensitive state program or policy. See generally D'Iorio v. County of Delaware, 592 F.2d 681, 685–86 (3rd Cir. 1978);

McKnight, supra, at 1240–42; Weber v. School District of Philadelphia, 465 F.Supp. 1371, 1375–84 (E.D.Pa.1979). In evaluating these questions, it is necessary for the court to examine the potential rulings.

If the court interprets N.J.S.A. 27:7A–13 as not covering plaintiffs' honor boxes, we would not have to reach the constitutional issue and therefore would not interfere at all with the state's actions. Thus, neither of the values underlying abstention would be furthered.

If the court decides that the statute's scope includes plaintiffs' boxes, then we would have to reach the constitutional issue. However, the constitutional question of whether a total bar against the placement of honor boxes "within the right-of-way of any portion of the Interstate and Primary Systems within [the] state," N.J. S.A. 27:7A–13, violates the First Amendment "involves the application of settled principles to a clear fact pattern," McKnight, supra, at 1241, and thus does not present a particularly novel constitutional analysis. Also, a decision that N.J.S.A. 27:7A–13 is unconstitutional as applied to plaintiffs' newspaper honor boxes would not jeopardize to any significant degree the state's programs or policies for regulating roadside signs within the rights-of-way of the highways in the Interstate and Primary Systems of New Jersey.[15] The decision would remove only one type of "roadside sign" from the state's grasp under the statute.[16] In addition, the state would still be free to promulgate reasonable "time, place and manner" regulations of honor boxes within the state's rights-of-way as long as the regulations are "narrowly tailored to further the State's legitimate interest[s]," Grayned v. City of Rockford, 408 U.S. 104,

14. It is worth noting that defendant George Tanger, the Regional Sign Coordinator for the State of New Jersey Department of Transportation, testified that the honor boxes would violate the statute even if they were devoid of any writing or printing identifying the newspapers.

15. Of course, such a decision would not affect the state's programs or policies for regulating roadside signs located outside the rights-of-way

of the specified highways or within the rights-of-way of other state roads.

16. Since the constitutional issue before the court in this case has been limited to the constitutionality of N.J.S.A. 27:7A–13 as applied to honor boxes, the constitutionality of the statute as applied to other types of "roadside signs" would not be determined.

116–17, 92 S.Ct. 2294, 2303–04, 33 L.Ed.2d 222 (1972), without unduly restricting First Amendment expression. *See, e.g., Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981); *Cox v. Louisiana,* 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965); *Westchester Rockland Newspapers v. Yonkers,* 5 Media L.Rptr. 1777, 1779–80 (S.D.N.Y.1979); *Philadelphia News., supra,* at 242–44; *Kash Enterprises, Inc. v. City of Los Angeles,* 19 Cal.3d 294, 138 Cal.Rptr. 53, 562 P.2d 1302 (1977).

In light of these considerations, the court believes that neither of the potential resolutions of the state law issue would substantially implicate the values that justify abstention. Thus, the third factor does not compel the court to abstain.

In conclusion, the above analysis of the various factors does not indicate that the case at bar is particularly appropriate for abstention. The benefits which abstention would provide are not of sufficient magnitude to invoke this extraordinary exception to the court's duty to exercise its jurisdiction. Accordingly, the court shall not abstain.

*Merits*

Plaintiffs in this proceeding are seeking to prevent defendants from removing plaintiffs' honor boxes from state highway rights-of-way. The two questions presented to the court can be stated as follows. First, are plaintiffs' honor boxes covered by the provisions of N.J.S.A. 27:7A–13 and/or N.J.S.A. 27:5–1? Second, assuming one or both of the statutes can be applied to plaintiffs' honor boxes, does the statute, as applied in this manner, impermissibly infringe upon plaintiffs' First and Fourteenth Amendment rights?

■ The considerations bearing on the first question received careful examination in our earlier discussion of abstention. In accordance with that analysis, the court holds that plaintiffs' honor boxes are "roadside signs" within the meaning of N.J.S.A. 27:7A–13,[17] and thus the statute can be applied to plaintiffs' honor boxes. With respect to N.J.S.A. 27:5–1, the court has concluded that defendants are not the appropriate authority to enforce its provisions and thus should not be allowed to rely on N.J.S.A. 27:5–1 as the basis for removing plaintiffs' boxes.[18] Under this disposition, the court will not address the applicability of N.J.S.A. 27:5–1 to plaintiffs' honor boxes.

Having decided that plaintiffs' honor boxes constitute roadside signs within the coverage of N.J.S.A. 27:7A–13, the court must next determine if N.J.S.A. 27:7A–13, as applied to prohibit the maintenance of plaintiffs' honor boxes within the right-of-way of portions of the Interstate and Primary Systems within the State of New Jersey, is an unconstitutional abridgment of plaintiffs' First Amendment rights.[19] In evaluating this issue, the court recognizes that certain fundamental principles underly our analysis.

■ A foremost consideration is the safeguarding of the constitutional rights of newspapers; a goal which is a significant, if not vital, First Amendment concern. *See, e.g., New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Grosjean v. American Press Co.,* 297 U.S. 233, 6 S.Ct. 444, 80 L.Ed. 660 (1936). In this regard, the First Amendment guarantees of freedom of the press and freedom of speech protect the distribution and circulation of a newspaper. The Supreme Court has emphasized that "[l]iberty of circulating is as essential to [freedom of the press] as liberty of publishing; indeed, without the circulation, the publication would be of little value." *Lovell v. Griffin,* 303 U.S. 444, 452, 58 S.Ct. 666, 669, 82 L.Ed. 949 (1938).

17. N.J.S.A. 27:7A–13 is set out at *supra* note 3.

18. *See* the discussion at *supra* note 12.

19. The First Amendment to the United States Constitution provides, in relevant part, that, "Congress shall make no law . . . abridging the freedom of speech, or of the press." These guarantees are made applicable to the States by the Fourteenth Amendment. *See, e.g., Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); *Gitlow v. New York,* 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925).

As the noted legal scholar Zechariah Chafee, Jr. emphasized, "Freedom is not safety but opportunity. Freedom ought to be a means to enable the press to serve the proper functions of communication in a free society." [20] In that honor boxes play a role in the distribution of plaintiffs' newspapers, this court agrees with the position that such devices are entitled to full constitutional protection. *See, e.g., Westchester Rockland Newspapers v. Yonkers*, 5 Media L.Rptr. 1777 (S.D.N.Y.1979); *Philadelphia News., Inc. v. Borough C., etc., Swarthmore*, 381 F.Supp. 228 (E.D.Pa.1974); *Kash Enterprises, Inc. v. City of Los Angeles*, 19 Cal.3d 294, 138 Cal.Rptr. 53, 562 P.2d 1302 (1977); *California Newspaper Publishers Assn., Inc. v. City of Burbank*, 51 Cal.App.3d 50, 123 Cal.Rptr. 880 (1975); *Gannett Co. v. City of Rochester*, 69 Misc.2d 619, 330 N.Y.S.2d 648 (1972).

Another significant factor presented in this case is that the honor boxes which defendants seek to remove are located alongside public streets and on or adjacent to public sidewalks. These places, as public forums, occupy a special position in First Amendment law.

"Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. CIO*, 307 U.S. 496, 515 [59 S.Ct. 954, 964, 83 L.Ed. 1423] (1939) (opinion of Roberts, Jr.). " '[S]treets, sidewalks, parks, and other similar public places are so historically associated with the exercise of First Amendment rights that access to them

for the purpose of exercising such rights cannot constitutionally be denied broadly and absolutely.' " *Hudgens v. NLRB*, 424 U.S. 507, 515, 96 S.Ct. 1029, 1034, 47 L.Ed.2d 196 (1976) (quoting *Food Employees v. Logan Valley Plaza*, 391 U.S. 308, 315, 88 S.Ct. 1601, 1607, 20 L.Ed.2d 603 (1968).

*Carey v. Brown*, 447 U.S. 455, 460, 100 S.Ct. 2286, 2290, 65 L.Ed.2d 263 (1980). *See, e.g., Schneider v. State*, 308 U.S. 147, 163, 60 S.Ct. 146, 151–52, 84 L.Ed. 155 (1939).

The combination of the special status of streets and sidewalks with the treatment of newspaper honor boxes as protected means of distribution has resulted recently in courts holding that ordinances or regulations which totally prohibit the use of such newspaper dispensers on a municipality's streets and sidewalks are unconstitutional abridgments of First Amendment rights. *See, e.g., Philadelphia News., supra; California Newspaper Publishers, supra; Remer v. City of El Cajon*, 52 Cal.App.3d 441, 125 Cal.Rptr. 116 (1975); *Gannett Co., supra. Cf. Redd v. Davison*, 7 Media L.Rptr. 1142 (E.D.Mich.1981) (tubular newspaper receptacles). The defendants assert that, unlike these types of cases, the case at bar does not present a situation where a statute or action by a state (the governmental and geographic entity) effects an absolute ban on the placement of honor boxes on the public streets and sidewalks within the boundaries of that state. Since N.J.S.A. 27:7A–13 affects only those streets which are part of "the Interstate and Primary Systems within [New Jersey]," there are many other public streets still available for plaintiffs' honor boxes.[21] Defendants fur-

---

**20.** "The Press Under Pressure," Wieman Reports, April 1948.

**21.** The court notes that none of the parties presented evidence which would indicate the percentage, location, or amount, in mileage or area, of public streets of the State of New Jersey which are not included in the Interstate and Primary Systems within the State. In that plaintiffs have failed to dispute the existence of other public streets in the State which are available for the placement of their boxes, the court will assume arguendo that such streets

are available. This assumption is highly likely since the placement of the vast majority of plaintiffs' honor boxes currently in use are not in question; thus, it certainly is plausible that many of these are positioned adjacent to public streets so as to attract pedestrian traffic.

Plaintiffs argue that the availability of other locations is utterly immaterial to the present case and that the total prohibition on the areas set out in N.J.S.A. 27:7A–13 necessitates treating the case at bar like the total prohibition cases cited above. Plaintiffs support their position with the often quoted statement from

ther argue that the challenged statute and its application to plaintiffs' honor boxes constitute a valid exercise of the state's police power to further legitimate state interests even though the resulting prohibition impinges upon plaintiffs' First Amendment interests.

■ The court does agree that this case differs somewhat from the total prohibition cases cited above and should be analyzed using the approach employed by the Supreme Court to evaluate zoning ordinances or similar "content-neutral" statutory prohibitions which infringe, even incidentally, upon the exercise of First Amendment rights. In general, the statute "must further a sufficiently substantial government interest" and it "must be narrowly drawn to avoid unnecessary intrusion on freedom of expression." *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 2183, n.7, 68 L.Ed.2d 671 (1981). The Court in *Schad* explained that:

> In *Schneider v. State*, 308 U.S. 147 [60 S.Ct. 146, 84 L.Ed. 155] (1939), for example, the Court recognized its obligation to assess the substantiality of the justification offered for a regulation that significantly impinged on freedom of speech:
>
> > "Mere legislative preferences or beliefs respecting matters of public convenience may well support regulation directed at other personal activities, but be insufficient to justify such as diminishes the exercise of rights so vital to the maintenance of democratic institu-

tions. And so, as cases arise, the delicate and difficult task falls upon the courts to weigh the circumstances and to appraise the substantiality of the reasons advanced in support of the regulation of the free enjoyment of [First Amendment] rights." 308 U.S., at 161 [60 S.Ct., at 151].

Similarly, in *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 637 [100 S.Ct. 826, 836, 63 L.Ed.2d 73] (1980), it was emphasized that the Court must not only assess the substantiality of the governmental interests asserted but also determine whether those interests could be served by means that would be less intrusive on activity protected by the First Amendment:

> "The Village may serve its legitimate interests, but it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms. *Hynes v. Mayor of Oradell*, 425 U.S., [610] at 620 [96 S.Ct. 1755 at 1760, 48 L.Ed.2d 243]; *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 786 [98 S.Ct. 1407, 1421, 55 L.Ed.2d 707] (1978). 'Broad prophylactic rules in the area of free expression are suspect. Precision of regulation must be the touchstone. . . .' *NAACP v. Button*, 371 U.S. 415, 438 [83 S.Ct. 328, 340, 9 L.Ed.2d 405] (1963)."

*Id.* 101 S.Ct. at 2183–84.

Defendants refer the court to N.J.S.A. 27:7A–11, entitled Purpose of Act, for a

---

*Schneider v. State, supra*, 308 U.S. at 163, 60 S.Ct. at 151–52, that, "[o]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place."

In *Schneider*, however, the ordinances under review absolutely prohibited distribution in the streets. *Id.* at 162, 60 S.Ct. at 151. The Court issued its statement about alternative places being inadequate in response to a suggestion that other public places could be used for distributing printed matters. The Court emphasized the importance of the relationship between the streets and speech and press. "[T]he streets are natural and proper places for the dissemination of information and opinion. . . ." *Id.* at 163, 60 S.Ct. at 151.

As noted above, plaintiffs have not demonstrated the unavailability of all public streets and

sidewalks. In addition, plaintiffs have not even attempted to show that the non-restricted streets are so different (functionally, geographically, amount of pedestrian traffic) from the restricted streets that they should be treated as "other public places." *Id.* at 163, 60 S.Ct. at 151. *Cf. Hamer v. Musselwhite*, 376 F.2d 479 (5th Cir. 1967) (holding valid an ordinance that prohibited parades or marches on certain city streets but not on the sidewalks or shoulders of these streets).

On the other hand, the court believes that the existence of alternative categories of public streets is not sufficient by itself to justify a total prohibition on one category of public roads. As a matter of fact, this blanket coverage is factored into the ensuing analysis of the statute's validity as applied to plaintiffs' honor boxes.

statement of the state interests relied upon to support the validity of N.J.S.A. 27:7A–13 and its application to plaintiffs' honor boxes. These interests are as follows: "to promote the safety, convenience and enjoyment of travel on, and protection of the recreational value and public investment in highways within this State and to preserve and enhance the natural scenic beauty or aesthetic features of the highways and adjacent areas. . . ."

The court recognizes that such interests as safety, *see, e.g., Heffron v. Int'l Society For Krishna Consciousness,* 452 U.S. 640, 101 S.Ct. 2559, 2565, 69 L.Ed.2d 298 (1981); *Grayned v. City of Rockford,* 408 U.S. 104, 115–16, 92 S.Ct. 2294, 2302–03, 33 L.Ed.2d 222 (1972); *Railway Express Agency, Inc. v. New York,* 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949); *Cox v. New Hampshire,* 312 U.S. 569, 574, 61 S.Ct. 762, 765, 85 L.Ed. 1049 (1941), and aesthetics or appearance, *see, e.g., Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); *Village of Belle Terre v. Boraas,* 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1973); *Berman v. Parker,* 348 U.S. 26, 33, 75 S.Ct. 98, 102–03, 99 L.Ed. 27 (1954), are worthwhile and substantial state goals. Thus, defendants have met the first requirement.[22]

The court does not draw the same conclusion with respect to the second re-

quirement. Defendants have the burden of establishing that the state "interests could not be met by restrictions that are less intrusive" on plaintiffs' protected First Amendment activities. *Schad v. Borough of Mount Ephraim, supra,* 101 S.Ct. at 2186. *See, e.g., Heffron v. Int'l Society For Krishna Consciousness, supra,* 101 S.Ct. at 2569 (Brennan, J., concurring in part, dissenting in part); *Schad v. Borough of Mount Ephraim, supra,* 101 S.Ct. at 2187 (Blackmun, J., concurring); *Talley v. California,* 362 U.S. 60, 66–67, 80 S.Ct. 536, 539–40, 4 L.Ed.2d 559 (1960) (Harlan, J., concurring); *Verrilli v. City of Concord,* 548 F.2d 262, 265 (9th Cir. 1977). This burden is especially heavy in the present case because the statute's far-reaching coverage as to both the type of objects and the geographic area has resulted in an obstructive impact on a very important activity (distribution of a newspaper)[23] occurring in an area (public sidewalks and area adjacent to public streets) which is highly valued by society as a place for such activity.

The court has carefully reviewed the record and finds that defendants have failed to provide adequate support for the position that the banning of roadside signs, as defined in N.J.S.A. 27:7A–12(g), in general, and honor boxes, in particular, from the "right-of-way of any portion of the Interstate and Primary Systems within" New

---

22. Although the court has accepted defendants' reliance on N.J.S.A. 27:7A–11 as the statement of goals underlying the enactment of N.J.S.A. 7A–13, the court does not believe that full reliance is warranted in light of certain language in N.J.S.A. 27:7A–11. After setting out the various goals, the statute provides that, "in order to promote" these goals,

> . . . it is the policy of this State that the erection and maintenance of outdoor advertising in areas adjacent to the rights-of-way of the Interstate and Primary Systems within this State shall be regulated in accordance with the terms of this act˜and the regulations promulgated by the (State Transportation Commissioner) pursuant thereto . . . .

In contrast, N.J.S.A. 27:7A–13, is concerned with "roadside signs" "within the right-of-way" and not with "outdoor advertising" signs "adjacent to the rights-of-way." Defendants have not attempted to explain this discrepancy; however, if the state considered safety, conve-

nience, aesthetics, etc., to be important and necessary for areas adjacent to the rights-of-way, it probably considered these goals important for areas within the rights-of-way. In light of the court's conclusions with respect to the second requirement, the court will assume arguendo that was the state's intent.

23. Although the court has focused its analysis on plaintiffs' rights, it is important to note that the public's right of access to newspapers is also implicated and must be considered in any determination. *See, e.g., Philadelphia News., Inc., supra,* at 243; *Remer v. City of El Cajon, supra,* 52 Cal.App.3d at 444, 125 Cal.Rptr. 116. Cf. *Saxbe v. Washington Post Co.,* 417 U.S. 843, 863, 94 S.Ct. 2811, 2821, 41 L.Ed.2d 514 (1974) (Powell, Jr., dissenting) ("First Amendment concerns encompass the receipt of information and ideas as well as the right of free expression.")

Jersey directly and narrowly furthers the asserted state interests. The evidence presented by defendants consists mainly of photographs of plaintiffs' honor boxes which are located within the rights-of-way in question and of an affidavit of an employee of the New Jersey Department of Transportation. Because of the relative paucity of evidence presented by defendants, an extended discussion is not necessary, or for that matter possible. However, a few points with respect to the relationship between the evidence and the asserted state interests shall be made.

First, although defendants argue that banning roadside signs, including honor boxes, from the rights-of-way in question promotes "safety, convenience and enjoyment of travel on, and protection of the recreational value and public investment" in State highways, their evidence of this connection basically is speculative.[24] Moreover, defendants have not shown that honor boxes or other roadside signs actually have been involved in traffic problems, injuries or damage to persons or property, loss of travelling enjoyment, etc., or in any way have hindered the furtherance of the listed goals. An examination of the photographs does not shed much light on how and to what extent, if any, the removal of all of the boxes will further the state interests, especially in light of the great variety of locations and placements. Granted that there are some pictures of unshoveled snow around a box or of boxes partially obstructing access to telephone or utility poles; however, these situations are totally inadequate to justify the broad restriction of N.J.S.A. 27:7A–13. In contrast, many of the photographs show that the boxes are not likely to interfere with motorist or pedestrian traffic, block views of traffic signs or street crossing pedestrians, damage the streets or sidewalks or cause other such problems.

Defendants further contend that honor boxes, in their capacity as newspaper dispensers, tempt motorists to stop to purchase a newspaper when such stopping or parking is illegal. The court considers this argument to be inappropriate since it is the responsibility of motorists, and not of newspapers, to insure that traffic laws are obeyed.

The second type of asserted state interest is concerned with preserving and enhancing "the natural scenic beauty or aesthetic features of the highways and adjacent areas." Aside from merely introducing the photographs, defendants have made no effort to demonstrate or explain how the statute and its application to honor boxes furthers these worthwhile aims. Admittedly, aesthetics has a higher subjective component than safety; however, the court does not believe that simply uttering the words aesthetics or appearance should magically alleviate any need for evidence connecting the regulation to the state interest, particularly where fully protected First Amendment interests are at stake.[25] It is not self evident to this court that the removal of each of the honor boxes shown in the photographs will improve the appearance of each area to such an extent that the abridgment of First Amendment rights is justified. Much of the "natural scenic beauty" sought to be enhanced appears to have been replaced by stores, utility poles, commercial billboards, traffic signs, benches, fire hydrants, mail boxes, street signs, and houses. In other words, the photographs show that many of the rights-of-way in question are located in populated, commercial areas where the box-

24. As support for their argument that traffic safety is promoted by prohibiting honor boxes on the state highway rights-of-way, defendants have cited cases finding a relationship between the removal of billboards and traffic safety. In response, the court first notes that the case at bar is concerned mainly with honor boxes and not billboards, which may present different issues. More importantly, the court agrees with Justice Brennan that the court should "not be so quick to accept legal conclusions in other cases as an adequate substitute for evidence in this case that banning [honor boxes] directly furthers traffic safety." *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 2903, 69 L.Ed.2d 800 (Brennan, Jr., concurring in the judgment). *See Donnelly v. Campbell*, 639 F.2d 6, 10 (1st Cir. 1980).

25. *See generally Metromedia, Inc. v. City of San Diego, supra*, 101 S.Ct. at 2904–06 (Brennan, Jr., concurring in the judgment).

es may even seem at home and not in unspoiled, scenic countrysides where the boxes might truly look out of place. The court strongly recommends that the state make a careful appraisal of exactly what it wishes to accomplish and where it should occur.

■ Even assuming the honor boxes have some negative impact on appearance, the court agrees with the sentiment that "[t]he First Amendment requires that we tolerate a certain amount of speech in forms that are not soothing to the ear or pleasing to the eye. *See Cohen v. California,* 403 U.S. 15, 21, 24–25 [91 S.Ct. 1780, 1786, 1787–88, 29 L.Ed.2d 284] (1971). *Cf. Rowan v. Post Office Department,* 397 U.S. 728, 738 [90 S.Ct. 1484, 1491, 25 L.Ed.2d 736] (1970)." *John Donnelly & Sons v. Campbell,* 639 F.2d 6, 23 (1st Cir. 1980) (Pettine, J., concurring in the judgment), aff'd mem., 453 U.S. 916, 101 S.Ct. 3151, 69 L.Ed.2d 999 (1981). In a similar vein, the fact that N.J.S.A. 27:7A–13 allows for exceptions to the general ban [26] for such structures as "panels for the display of advertising and informational signs" indicates that the state is willing to tolerate some detraction from aesthetics in order to serve other purposes.

■ In conclusion, defendants have failed to establish that N.J.S.A. 27:7A–13 and its application to plaintiffs' honor boxes sufficiently further the asserted state interests. In addition, since defendants have not even demonstrated that the statute as written serves the state goals, it is not necessary for the court to determine if the statute is sufficiently definite or could be tailored more narrowly.[27] Thus, in accordance with the reasons set forth herein, the court will enter a final judgment: declaring that N.J.S.A. 27:7A–13 is unconstitutional as applied to prohibit totally the erection or maintenance of honor boxes within the right-of-way of any portion of the Interstate and Primary Systems within the State of New Jersey; permanently enjoining defendants from removing plaintiffs' honor boxes in pursuance of N.J.S.A. 27:7A–13; and permanently enjoining defendants from removing plaintiffs' honor boxes in pursuance of N.J.S.A. 27:5–1.

26. The exceptions are for "signs, public notices, or markers, erected or maintained by the Department of Transportation, or the signs erected or maintained at the 'informational sites' ...." An "Informational site," as defined in N.J.S.A. 27:7A–12(e), is "an area or a site established and maintained within or adjacent to the right-of-way of a highway on the Interstate System by or under the supervision or control of the Department of Transportation, wherein panels for the display of advertising and informational signs may be erected and maintained."

27. Defendants also suggest that N.J.S.A. 27:7A–13 and its application to plaintiffs' honor boxes constitutes a reasonable "time, place and manner" restriction. For a regulation to be a valid time, place and manner regulation: it " 'may not be based upon either the content or subject matter of the speech,' " *Heffron v. International Society For Krishna Consciousness,* 452 U.S. 640, 101 S.Ct. 2559, 2564, 69 L.Ed.2d 298 (1981) (citation omitted); it must " 'serve a significant governmental interest,' " *id.* 101 S.Ct. at 2565 (citations omitted); and "it must also be sufficiently clear" that "ample alternative channels for communication" exist. *Consolidated Edison Co. v. Public Service Commis-*

*sion,* 447 U.S. 530, 535, 100 S.Ct. 2326, 2332, 65 L.Ed.2d 319 (1980). *See Heffron, supra,* 101 S.Ct. at 2567. In *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), the Court elaborated on the appropriate analysis.

> The nature of a place, "the pattern of its normal activities, dictate the kinds of regulations of time, place, and manner that are reasonable." ... The crucial question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time. Our cases make clear that in assessing the reasonableness of a regulation, we must weigh heavily the fact that communication is involved; the regulation must be narrowly tailored to further the State's legitimate interest.

*Id.* at 116–17, 92 S.Ct. at 2303–04 (footnotes omitted).

As the court observed above, defendants have failed to establish that the statute and its application to plaintiffs honor boxes sufficiently serves state interests, let alone in a narrowly tailored fashion. Thus, defendants' time, place and manner argument is rejected.