MILLER NEWSPAPERS, INC., d/b/a
The Brattleboro Reformer

v.

CITY OF KEENE, and Harold A. Becotte,
individually and in his capacity as Chief
of Police of the Keene Police Depart-
ment.

Civ. No. 82–435–D.

United States District Court,
D. New Hampshire.

Sept. 9, 1982.

Robert T. Kennedy, Keene, N.H., for plaintiff.

Charles H. Morang, City Atty., Keene, N.H., for defendant.

## OPINION

DEVINE, Chief Judge.

At approximately 3 o'clock on the morning of May 3, 1982, employees of the Brattleboro Reformer placed two coin-operated newspaper vending machines on the sidewalks of Main Street in the city of Keene, New Hampshire, and chained each newsrack to a parking meter with a short length of cable. On May 17, 1982, at time of day unknown, employees of the Public Works Department of the City of Keene, armed with boltcutters or like instruments, removed the newsracks and transported them to the Police Department, per order of the City Attorney. Of such auspicious beginnings was this First Amendment case born.

Plaintiff thereafter filed this civil rights action, 42 U.S.C. § 1983, claiming that defendants' removal of the newsracks violated plaintiff's First and Fourteenth Amendment rights. Jurisdiction is founded upon 28 U.S.C. § 1343(3). Plaintiff now moves for a preliminary injunction to enjoin any further seizure of its newsracks.

To demonstrate entitlement to a preliminary injunction in the First Circuit, a plaintiff must satisfy four criteria. The Court must find: (1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction. *Auburn News Company, Inc. v. Providence Journal Company*, 659 F.2d 273, 277 (1st Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982) (and cases cited and quoted therein). Application of these principles requires review of the salient facts.

*The Facts*

The Brattleboro Reformer ("Reformer") is a general interest newspaper with a circulation of approximately 9000 papers daily in Windham County, Vermont, and southwestern New Hampshire. Until May of 1982 the Reformer was an evening newspaper. In May the publishers initiated a morning edition. According to its Circulation Manager, Jeffrey Cohen, approximately 1000 papers are sold daily in the Cheshire County/Keene, New Hampshire, area. Approximately 25 copies of the Reformer are sold in Keene daily. Approximately five papers were sold each day from each newsrack while they were in place. The newsracks are the only means of distribution of the Reformer after stores are closed.

The Reformer has sold and continues to sell newspapers from twelve newsracks in Brattleboro, Vermont. The newsracks are located on the curbs adjacent to parking meters, and are attached to the bases of the meters with short lengths of aircraft cable. Plaintiff's Exhibits 1A and 1B. Theft and/or vandalism of unsecured boxes prompted the use of the cables.

Cohen placed two such newsracks on the sidewalks in Keene on May 3, 1982. No contact was made with the City prior to putting the racks on the sidewalks. Shortly after the newsracks were installed, Cohen was contacted by the Keene Police Department and told that the newsracks would have to be removed. On or about May 10 Cohen spoke with the City Attorney for the City of Keene. According to Cohen, the City Attorney informed him that the newsracks would have to be removed from the curb area and that, to the best of his recollection, no mention of public safety or problems with the parking meters was made. The City Attorney maintains that the City's objection was to the chaining of the newsracks to the meters, and that this was communicated to Cohen. Some discussion ensued regarding the possibility of putting the racks next to the buildings, but because of apparent confusion as to whether the fee next to the building was publicly or privately owned, Cohen did not consider this a viable option. Cohen suggested that the Keene City Attorney discuss his concerns with the City Attorney for Brattleboro, Vermont, with whom Cohen had had some discussion regarding the proper placement of newsracks. The Keene City Attorney declined. A few days later Cohen received a telephone message from the City Attorney stating that the newsracks would have to be removed or they would be seized. On May 17, 1982, they were seized.

The following day the City Attorney sent a letter to plaintiff's attorneys requesting that the Reformer retrieve its newsracks. The letter further stated that the City Council was considering a "hawkers and peddlers" ordinance, and that while it would not be possible for newspaper boxes to be chained to parking meters, the author could "personally see no reason" why newspaper boxes could not be permitted on the sidewalks, in a manner safe for pedestrian use, along with human hawkers and peddlers. Plaintiff's Exhibit 3.

It is stipulated that there is currently no City ordinance governing the placement of newsracks or vending machines in the city, or governing the removal of same. At no time either prior to or after the removal of plaintiff's newsracks was the Reformer given an opportunity to be heard concerning the City Attorney's determination that the newsracks were improperly situated.

*Discussion*

The First and Fourteenth Amendments' guarantee of freedom of the press and freedom of speech "extends to the *means* of distribution of the newspaper as well as to its content and the ideas expressed therein". *Philadelphia News, Inc. v. Borough Council, Mayor, Manager and Director of Public Works of the Borough of Swarthmore,* 381 F.Supp. 228, 240 (E.D. Pa. 1974) (*"Philadelphia News"*) (emphasis in original). "Liberty of circulating is as essential to that freedom as liberty of publishing; indeed, without the circulation, the publication would be of little value." *Lovell v. City of Griffin, Ga.,* 303 U.S. 444, 452, 58 S.Ct. 666, 669, 82 L.Ed. 949 (1938),

**834**

quoting *Ex parte Jackson,* 96 U.S. 727, 24 L.Ed. 877 (1877). First Amendment protections are not lost or diminished because the newspapers at issue here are sold rather than distributed freely. *See Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 504 n. 11, 101 S.Ct. 2882, 2890 n. 11, 69 L.Ed.2d 800 (1981) (and cases therein cited) ("*Metromedia*"); *Smith v. California,* 361 U.S. 147, 150, 80 S.Ct. 215, 217, 4 L.Ed.2d 205 (1959); *Wulp v. Corcoran,* 454 F.2d 826, 835 n. 13 (1st Cir. 1972).

▮ The right of access to public streets and sidewalks has long been recognized as essential to the exercise of First Amendment freedoms.

Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for the purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been part of the privileges, immunities, rights, and liberties of citizens. The privilege of a citizen of the United States to use the streets and parks for communication of views on national questions may be regulated in the interest of all; it is not absolute, but relative, and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order; but it must not, in the guise of regulation, be abridged or denied.

*Hague v. CIO,* 307 U.S. 496, 515–16, 59 S.Ct. 954, 963–64, 83 L.Ed. 1423 (1939). The right of access encompasses the related right to distribute printed material. *Flower v. United States,* 407 U.S. 197, 92 S.Ct. 1842, 32 L.Ed.2d 653 (1972); *Schneider v. State of New Jersey,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1938). Accordingly, those courts which have considered the question have ruled that newsracks and newspaper vending machines located along public streets and sidewalks are a constitutionally protected means of distribution, and that a blanket prohibition against such devices is unconstitutional. *Southern New Jersey Newspapers, Inc. v. State of New Jersey, et al.* and *Woodbury Daily Times v. State of New Jersey,* 542 F.Supp. 173 (D.N.J. 1982) (consolidated action) ("*Southern New Jersey*"); *Westchester Rockland Newspapers, Inc. v. The Village of Briarcliff Manor, et al.,* No. 1095 (S.D.N.Y. Dec. 17, 1980); *Philadelphia News, supra; Remer v. City of El Cajon,* 52 Cal.App.3d 441, 125 Cal.Rptr. 116 (1975); *California Newspaper Publishers Association, Inc. v. City of Burbank,* 51 Cal.App.3d 50, 123 Cal.Rptr. 880 (1975); *Gannett Co., Inc. v. City of Rochester,* 69 Misc.2d 619, 330 N.Y.S.2d 648 (N.Y. Sup. Ct. 1972).

▮ Constitutional protections do not exempt newspaper vending machines from all municipal regulation, however. A municipality may impose reasonable time, place, and manner restrictions on the use of the machines. *Cf. Westchester Rockland Newspapers v. City of Yonkers, et al.,* No. 79–1168 (S.D.N.Y. Aug. 9, 1979); *Houston Chronicle Publishing Company v. City of Houston,* Tex. Civ. App., 620 S.W.2d 833 (1981) ("*Houston Chronicle*"); *Kash Enterprises, Inc. v. City of Los Angeles,* 19 Cal.3d 294, 138 Cal.Rptr. 53, 562 P.2d 1302 (1977) ("*Kash*"). A municipality's power to regulate is far from unfettered, however. The restrictions, and their manner of enforcement, must themselves pass constitutional muster. *Metromedia, supra* 453 U.S. at 515–17, 101 S.Ct. at 2896–97; *Heffron v. International Society for Krishna Consciousness, Inc.,* 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981) ("*Heffron*"); *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 74–77, 101 S.Ct. 2176, 2186–87, 68 L.Ed.2d 671 (1981) ("*Schad*"); *Southern New Jersey, supra; Westchester Rockland Newspapers v. City of Yonkers, et al., supra; Houston Chronicle, supra.*

The City contends that it does not wish to impose a total ban on newsracks, but that it only wishes, in the interest of public safety, to prohibit the Reformer from attaching the newsracks to parking meters. As an initial matter, the argument overlooks the fact that by summarily removing the newsracks without affording plaintiff any oppor-

tunity to contest their removal, the City, in effect, created at least a temporary ban. The City's position is made all the more tenuous by the fact that there is no ordinance, rule, or regulation governing the placement of newsracks in the city of Keene which authorizes the action undertaken. Defendants do not contend that summary removal of the newsracks was necessary to protect the public from a clear danger of imminent harm to persons or property.[1] Instead, the City appears to advance the theory that it has the inherent police power to impose, in its discretion, time, place, and manner restrictions on a case-by-case basis, without the procedural due process protections otherwise accorded property rights and First Amendment interests.

It is this position which is vulnerable to constitutional challenge at this juncture.[2] The City may, of course,

> serve its legitimate interests, but it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms. *Hynes v. Mayor of Oradell,* 425 U.S., [610] at 620 [96 S.Ct. 1755, 1760, 48 L.Ed.2d 243]; *First National Bank of Boston v. Bellotti,* 435 U.S. 765, 786 [98 S.Ct. 1407, 1421, 55 L.Ed.2d 707] (1978). 'Broad prophylactic rules in

the area of free expression are suspect. Precision of regulation must be the touchstone . . . .' *NAACP v. Button,* 371 U.S. 415, 438 [83 S.Ct. 328, 340, 9 L.Ed.2d 405] (1963).

*Schad, supra* at 70, 101 S.Ct. at 2183, *quoting Village of Schaumberg v. Citizens for a Better Environment,* 444 U.S. 620, 637, 100 S.Ct. 826, 836, 63 L.Ed.2d 73 (1980). "[A]rbitrary discretion . . . vested in some governmental authority . . . is . . . inherently inconsistent with a valid time, place and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view." *Heffron, supra* 452 U.S. at 649, 101 S.Ct. at 2564 (citations omitted).

■ Here action was taken without benefit of any regulation—narrowly drawn or otherwise. No emergency conditions were presented. The newsracks were removed because certain City officials personally determined that the newsracks were improperly situated. No curb on or guidelines for the exercise of their judgment existed. "When a city allows an official to ban [a means of communication] in his uncontrolled discretion, it sanctions a device for suppression of free communication of ideas." *Saia v. People of the State of New York,* 334 U.S. 558, 562, 68 S.Ct. 1148, 1150, 92 L.Ed. 1574 (1948).[3] The constitutional

1. Nor would such a contention find support in the record. There is here no evidence that the newsracks were poorly maintained or damaged in such a way as to present a danger to passers-by or automobiles. No complaints were lodged with the City concerning the newsracks. The City's stated concern is that the newsracks, when attached to parking meters, might impede pedestrian traffic (head-on parking is utilized in Keene) and interfere with the proper utilization of the meters. The latter claims are somewhat undercut by the fact that the City itself attaches parking ticket collection boxes and trash cans to the sides of its parking meters. No showing of clear or imminent danger has been made here.

2. One federal district court has ruled in an analogous case as follows:
> We recognize that the Village could constitutionally regulate plaintiff's use of the sidewalks in an ordinance setting forth reasonable, narrowly drawn 'time, place, and manner' regulations and providing procedural

safeguards adequate to protect the First Amendment interests at stake. Cf. *Westchester Rockland Newspapers, Inc. v. City of Yonkers* (S.D.N.Y. August 9, 1979) 79 Civ. 1168; *Kash Enterprises, Inc. v. City of Los Angeles* (1977) [19 Cal.3d 294] 128 Cal.Rptr. 53, 562 P.2d 1302. We further recognize that even without such an ordinance the Village, under its police power, could seize any newsrack presenting a clear danger of imminent harm. Cf. *Westchester Rockland Newspapers, Inc. v. City of Yonkers, supra; Kash, supra.* It may not, however, seize newsracks under the circumstances above described. *Westchester Rockland Newspapers v. Village of Briarcliff Manor,* No. 79–1095, slip op. at 2 (S.D.N.Y., Aug. 9, 1975) (footnote omitted).

3. *Saia* involved a city ordinance prohibiting the use of a sound amplification device without the permission of the Police Chief. Similar licensing systems have been held an unconstitutional "prior restraint" on speech because they "vest in an administrative official broad discretion to

flaw here lies in the very existence of such unfettered discretion. While pedestrian safety may be a legitimate municipal concern, "there are means available to the City [of Keene] for accomplishing such an objective which do not impose the sort of restrictions on First Amendment rights as are involved here". *Wulp v. Corcoran, supra* at 834 (and cases therein cited) (footnote omitted).

■ Nor can it be said on the basis of the present record that the City's actions otherwise comport with due process. Here we have not a restriction or a regulation, but a seizure of property—property affected by First Amendment interests. "[D]ue process ordinarily requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant property interest." *Hodel v. Virginia Surface Mining and Reclamation Association,* 452 U.S. 264, 299, 101 S.Ct. 2352, 2372, 69 L.Ed.2d 1 (1981) (citations omitted).[4] Although "summary administrative action [without prior notice and hearing] may be justified in emergency situations", *id.* at 300, 101 S.Ct. at 2372, it is clear, see n. 1, *supra,* that such emergency conditions did not exist here. There is no suggestion in our jurisprudence that the requirement of a hearing can be done away with altogether when a constitutionally protected interest is the subject of official deprivation. *Id.; Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981);

*Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 8 (1976); *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).[5] Plaintiffs were deprived of property—newsracks and the daily newspapers contained therein—without any opportunity for a hearing at any time. Tested against "the strictures of due process", defendants' actions would thus appear constitutionally infirm. *See Kash, supra* 128 Cal.Rptr. at 62, 562 P.2d 1302.

■ When First Amendment interests are implicated, rigorous adherence to adequate procedural safeguards is also required to protect First Amendment activity from unwarranted governmental intrusion. *See Vance v. Universal Amusement Company, Inc.,* 445 U.S. 308, 315, 100 S.Ct. 1156, 1161, 63 L.Ed.2d 413 (1980); *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); *Carroll v. Princess Anne,* 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968); *Freedman v. Maryland,* 380 U.S. 51, 57–58, 85 S.Ct. 734, 738–39, 13 L.Ed.2d 649 (1965); *Marcus v. Search Warrant,* 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961); *Speiser v. Randall,* 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 460 (1958); *Kash, supra.* This case presents "but a special instance of the larger principle that freedoms of expression must be ringed about with adequate bulwarks". *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 66, 83 S.Ct. 631, 637, 9 L.Ed.2d 584 (1962).

grant or withhold a permit upon broad criteria unrelated to proper regulation of public places". *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 153, 89 S.Ct. 935, 940, 22 L.Ed.2d 162 (1968) (parade permit); *see also Kunz v. City of New York,* 340 U.S. 290, 293–94, 71 S.Ct. 312, 314–15, 95 L.Ed. 280 (1951) (public worship permit); *Strasser v. Doorley,* 432 F.2d 567, 569 (1st Cir. 1970) (and cases cited) (licensing of newsboys). This is not a "prior restraint" case in the classic sense, since here there was no City rule or regulation explicitly requiring advance permission before placing newsracks on the street. However, the price paid for failing to obtain advance permission was the removal of the newsracks. Whether this case is better characterized as a "prior restraint" case—as plaintiff suggests—or as a "police power" case—as defendants suggest— is not material here. The key difficulty in either event is the exercise of unbridled discretion by the municipal officer. *See Heffron,*

*supra* 452 U.S. at 647, 101 S.Ct. at 2563; *Stepping Stone Enterprises, Ltd. v. Andrews,* 531 F.2d 1, 3 (1st Cir. 1976).

4. The fact that the taking may only be temporary does not alter the constitutional analysis, as the party aggrieved is deprived of the use and enjoyment of his or her property during the term of the seizure. *Sniadach v. Family Finance Corporation,* 395 U.S. 337, 339, 89 S.Ct. 1820, 1821, 23 L.Ed.2d 349 (1969).

5. In *Parratt v. Taylor, supra,* the Court held that a state prisoner who was deprived of a hobby kit due to negligent processing of the mails by state prison officials was not denied due process because collateral state tort remedies were available to him. The instant case deals with a deliberate seizure, and *Parratt v. Taylor's* reliance on state tort remedies is therefore inapplicable.

In the instant case the newsracks were seized by the City without any opportunity for the plaintiff to challenge the City's determination. Although the City's actions were undertaken because of the placement of the newsracks, and not the content of the newspapers, the methods employed by the City in removing the newsracks nevertheless appear to lack "the procedural safeguards that reduce the danger of suppressing constitutionally protected speech". *Southeastern Promotions, Ltd. v. Conrad, supra* 420 U.S. at 559, 95 S.Ct. at 1247; *see also Kash, supra* (provisions of ordinance permitting seizure and destruction of newsracks in non-emergency situations without prior notice or opportunity to be heard held unconstitutional); *Westchester Rockland Newspapers, Inc. v. City of Yonkers, et al., supra* (provisions of newsrack ordinance providing inadequate hearing procedures held invalid).

 For the reasons set forth above, the Court finds and rules that plaintiff has demonstrated a likelihood of success on the merits on its claim that defendants' summary removal without notice or hearing of plaintiff's newsracks, in the absence of the authority of a narrowly drawn ordinance and in the absence of a clear and imminent danger to person or property, violates plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution. Finding that any further disruption of the distribution of plaintiff's newspapers would cause irreparable harm to the exercise of plaintiff's First Amendment rights, that such harm outweighs any harm to the defendants, and that the public interest would not be disserved by an injunction, plaintiff's motion for injunctive relief is granted.

[14,.15] Lest there be any misunderstanding, however, the Court reiterates the maxim that "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired". *Heffron, supra* 452 U.S. at 647, 101 S.Ct. at 2563. The City may enact narrowly drawn reasonable time, place, and manner restrictions

"provided they are justified without reference to the content of the regulated speech, that they serve a significant governmental interest, and that in doing so they leave open ample alternative channels for communication". *Id., quoting Virginia Pharmacy Board v. Virginia Citizens Consumer Council,* 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976). *Cf. Westchester Rockland Newspapers, Inc. v. City of Yonkers, et al., supra,* slip op. at 6 & n. 9.

The parties shall submit an appropriate Order by Tuesday, September 15, 1982, at 4:30 p.m.

SO ORDERED.