**GANNETT SATELLITE INFORMATION NETWORK, INC., Plaintiff,**

v.

**TOWN OF NORWOOD, Defendant.**

**GANNETT SATELLITE INFORMATION NETWORK, INC., Plaintiff,**

v.

**TOWN OF RANDOLPH, Defendant.**

**GANNETT SATELLITE INFORMATION NETWORK, INC., Plaintiff,**

v.

**TOWN OF WINCHESTER, Defendant.**

Civ. A. Nos. 83–2750–C, 83–2751–C and 83–2752–C.

United States District Court, D. Massachusetts.

Jan. 25, 1984.

Douglas P. Woodlock, Marjorie R. Corman, Goodwin, Procter & Hoar, Boston, Mass., for plaintiffs.

William Carr, Town Counsel for Town of Randolph, Boston, Mass., for defendant in No. 83–2751–C.

Justin C. Barton, Town Counsel of Norwood, Norwood, Mass., for defendant in No. 83–2750–C.

Douglas A. Randall, Town Counsel for Town of Winchester, Quincy, Mass., for defendant in No. 83–2752–C.

## MEMORANDUM

CAFFREY, Chief Judge.

These are three civil actions seeking declaratory and injunctive relief for alleged violations of 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 2201.

Plaintiff Gannett Satellite Information Network, Inc., ("Gannett") publishes USA TODAY, a nationally distributed daily morning newspaper, published Monday through Friday. Gannett first published USA TODAY in September 1982, and began distributing the newspaper in New England on September 12, 1983.

USA TODAY's newsracks are approximately four feet high and two feet wide. The newspapers are contained in a box situated on top of a pedestal approximately two and one half feet high. The newsracks are blue, white and black and bear the words, "USA TODAY," on three sides. The newspapers are visible through the clear plastic front of the box.

Defendants are three Massachusetts towns in which Gannett has begun distributing USA TODAY. The Town of Randolph has threatened to remove the newsracks. Norwood and Winchester actually seized the newsracks, but returned them after Honorable David A. Nelson of this Court ordered them to do so. This Court issued a preliminary injunction on October 17, 1983, enjoining the towns from interfering with distribution of the newspapers. The cases are now before the Court on plaintiff's motion for summary judgment and for permanent injunctive relief.

*Gannett v. Town of Norwood*

In early summer 1983, Gannett planned to begin distributing USA TODAY in Norwood starting in September. By letter dated July 8, 1983, Gannett asked the Town to send it copies of all town regulations, rules or ordinances applicable to circulation of newspapers by the use of newsracks within the Town. Without identifying any by-law as applying specifically to the newsracks, Robert M. Thornton, Town Clerk and Accountant, sent to Gannett a copy of the Town's entire by-laws.

By letter dated August 5, 1983, Gannett informed Thomas Riolo, Chairman of the Norwood Board of Selectmen, that it intended to proceed with its plan to place newsracks in the Town beginning August 15, 1983. Gannett also notified the Chief of the Norwood Police Department by letter dated August 9, 1983, that it planned to begin placing the newsracks on that date. On September 3, 1983, Gannett placed four newsracks in public areas within the Town.

By letter dated September 9, 1983, John J. Carroll, General Manager of the Town, advised Gannett that "at their meeting of Wednesday, September 7, 1983, the Board of Selectmen [had] ordered the removal of all USA TODAY boxes from all public ways in the Town of Norwood," that all four boxes had been removed, and that the boxes would be released only to a duly authorized representative of USA TODAY. On September 20, 1983, Judge Nelson ordered the Town to return the boxes to Gannett, and on or about September 22, 1983, Gannett returned the boxes to their locations within the Town.

In its answer, Norwood alleges that placement of the newsracks violates "the Zoning By-Law of the Town of Norwood; Section 31 of Article XII-Police Regulations of the general by-laws of the Town of Norwood; and Chapter 93D of the [Massachusetts] General Laws." The Town points to no specific zoning by-law which Gannett has violated by placing the newsracks in the Town. Article XII § 31 of the general by-laws provides:

> No person shall, without the authority of the Board of Selectmen, place, paint or affix any sign, picture, political poster or advertising material of any kind upon any post, tree, sign, rock or other fixed place or object within the limits of any public way in the Town.
> Anyone violating this By-Law shall be subject to a fine not in excess of Twenty ($20.00) Dollars for each offense.

M.G.L. c. 93D regulates outdoor advertising adjacent to the interstate and primary highway systems.

### Gannett v. Town of Randolph

By letter dated July 8, 1983, Gannett asked the Town of Randolph to send it copies of any town rules, regulations or ordinances pertaining to circulation of newspapers by the use of newsracks within the Town. Joan F. Ward, the Town Clerk, responded on July 12, 1983, by sending to Gannett a copy of the Town's by-laws. Gannett informed Alvin J. Yorra, Chairman of the Town's Board of Selectmen, by letter dated August 5, 1983, that it intended to proceed with its plan to place the newsracks in the Town starting August 15, 1983. Gannett also advised O.J. Benjamino, the Town's Police Chief, by letter dated August 9, 1983, that it intended to begin placing the newsracks on August 15, 1983, and that it intended to begin distributing the newspapers on September 12, 1983.

By letter dated August 26, 1983, Chairman Yorra informed Gannett that "permission to place newsracks in various locations throughout the Town of Randolph for purposes of selling [USA TODAY] is denied." On September 7, 1983, Gannett placed six USA TODAY newsracks in public locations within the Town. Chairman Yorra then notified Gannett by letter dated September 13, 1983, that the Board of Selectmen had voted that "the publishers of 'USA TODAY' be notified to have the 'USA TODAY' vending machines removed from the sidewalks of Randolph by next Monday, September 19, 1983, by noon."

In a letter dated September 14, 1983, William Carr, Town Counsel, mailed to Gannett copies of three of the Town's by-laws. The by-laws, set out in the margin, prohibit use of the Town's sidewalks, streets and public ways to sell or display any merchandise without permission of the Board of Selectmen.[1]

On September 20, 1983, Judge Nelson enjoined the Town from removing or disturbing the newsracks.

### Gannett v. Town of Winchester

By letter dated July 8, 1983, Gannett asked the Town of Winchester to send it copies of all town rules, regulations or ordinances pertaining to circulation of newspapers by the use of newsracks within the Town. When it received no response, Gan-

---

**1.** Section 14 of Article 16, 1931 Town Meeting, provides:

> No person shall obstruct the free, open and convenient use by the public for travel of any sidewalk, by occupying the same with goods, wares, merchandise or other chattels, or truck unloading merchandise, or by using the same as a place of resort, amusement, recreation or business.

Section 18 of Article 86, 1965 Town Meeting, provides:

> No person shall use or occupy part of a public street or sidewalk for the purchase, sale, storage or display of merchandise or other articles except by license of the Board of Selectmen.

Section 2 of Article 99, 1973 Town Meeting, provides:

> No person shall sell, solicit or display goods, articles, wares or merchandise upon the public ways of the Town unless duly licensed to do so by first having obtained a written permit from the Board of Selectmen.

nett informed the Town's Board of Selectmen by letter dated July 29, 1983, that it intended to begin placing USA TODAY newsracks within the Town on August 15, 1983.

Douglas A. Randall, Town Counsel, responded by letter dated August 4, 1983, that Chapter 8 § 10 of the Town's by-laws prohibits placing any obstruction on any public street or sidewalk without a permit from the Board of Selectmen. He opined that the machines "would constitute an unlawful purpresture under the common law."

By letter dated August 9, 1983, Gannett advised the Town's Police Chief that it intended to begin placing the newsracks on August 15, and to begin distributing the newspapers on September 12. On August 26, 1983, Gannett installed five newsracks in public locations in the Town.

Acting on the suggestion of the Board of Selectmen, Gannett applied for a permit for the newsracks by letter dated September 1, 1983, while preserving its objection that the Town's by-laws were unconstitutionally vague and overbroad as they applied to its newsracks. On September 12, Gannett began distributing USA TODAY in the Town. On the same day, Gannett's counsel appeared at a permit hearing before the Board of Selectmen. At the close of the meeting, the selectmen voted to deny the permit because Gannett had failed to show that the newsracks would not be a danger to public safety nor inconvenience public travel, because they would substantially interfere with removal of snow from Town sidewalks, because they may become a safety hazard to young children, and because "placement of the boxes in the downtown area is contrary to the Winchester Center Urban Design Improvement Project now underway."

On September 12, 1983, the Town instituted criminal proceedings against Gannett for obstructing Town streets and sidewalks without first obtaining a permit from the Board of Selectmen. On or about September 16, 1983, the Town removed the five newsracks. On September 20, 1983, Judge

Nelson ordered the Town to return the boxes.

■ The record shows with respect to all three towns that, although Gannett has refused to comply with town procedures it considers unconstitutional, it has attempted at all times to accommodate the safety concerns of town officials. And, of course, "a person faced with . . . an unconstitutional licensing law may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license." *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151, 89 S.Ct. 935, 938, 22 L.Ed.2d 162 (1969); *Lovell v. Griffin*, 303 U.S. 444, 452–53, 58 S.Ct. 666, 669, 82 L.Ed. 949 (1938).

### *YOUNGER Abstention*

The Town of Winchester urges this Court to abstain under principles set out by the Supreme Court in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The Court in *Younger* ruled that a federal court should not enjoin a criminal action pending in state court prior to commencement of the federal suit, absent certain extraordinary circumstances. And "where an injunction would be impermissible under [*Younger*] principles, declaratory relief should ordinarily be denied as well." *Samuels v. Mackell*, 401 U.S. 66, 73, 91 S.Ct. 764, 768, 27 L.Ed.2d 688 (1971).

On September 12, 1983, Andrew Crawford, the Prosecuting Officer of the Winchester Police Department, filed an application for a complaint in the Woburn Division of the Massachusetts District Court Department (4th District, Eastern Middlesex) against Gannett and its counsel. The application alleged that Gannett and counsel "[d]id without obtaining a permit from the Board of Selectmen, did [sic] place an obstruction in the streets and sidewalks within the Town of Winchester and allow them to remain there so as to impede free passage of pedestrians and snow removal equipment: to wit: USA TODAY newspaper vending machines," in violation of Chapter 8 § 10 of the Town's by-laws. A

hearing to show cause was scheduled for September 27, 1983, but was continued until October 11, apparently at Gannett's request. At the hearing, the Deputy Clerk of the state District Court found probable cause to believe the Town's by-law had been violated and endorsed six separate applications for complaint.[2] The parties have not notified this Court of a trial date for the state criminal case. Gannett filed suit in federal court on September 19, 1983.

■ Gannett argues against abstention that on September 12, 1983, the Town filed merely an application for complaint, not an actual complaint. Because "a criminal proceeding [is] commenced in the District Court by a complaint, ..." Mass.R.Crim.P. 3(a), Gannett argues, no criminal proceeding necessary to trigger *Younger* abstention had yet been filed at the time Gannett filed suit in federal court on September 19. But application of the *Younger* doctrine does not depend on so wooden an approach to the date when a state criminal action begins. By the time Gannett filed suit in federal court, the Town had already taken all necessary and proper steps to begin a formal criminal action against Gannett in state court. The same concerns the Supreme Court cited in requiring abstention in *Younger*—notions of comity, federalism, and equitable restraint—militate against interfering with the criminal process in this case which has already begun. A decision on the merits by this Court would likely result in some "disruption of the State criminal justice system," and could be "interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles." *Steffel v. Thompson,* 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974). For those reasons, I rule that there is presently pending a state criminal action for purposes of *Younger* analysis.

■ Because *Younger* applies, Gannett must show that this case falls within one of the very limited exceptions the Su-

preme Court has recognized to the doctrine. The record contains no showing that the Town of Winchester commenced criminal proceedings in bad faith, or in order to harass Gannett. A federal court may exercise its discretion to enjoin a state criminal proceeding from enforcing a statute "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Younger v. Harris,* 401 U.S. at 53–4, 91 S.Ct. at 754–55, *quoting Watson v. Buck,* 313 U.S. 387, 402, 61 S.Ct. 962, 967, 85 L.Ed. 1416 (1941). But that is not this case. The ordinance by which the Town proceeds against Gannett is not unconstitutional on its face and because the state courts might very well construe the ordinance narrowly so as to pass constitutional muster, the state forum is particularly appropriate. *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *Rushia v. Town of Ashburnham, Massachusetts,* 701 F.2d 7 (1st Cir.1983).

I rule that the preliminary injunction should, therefore, be dissolved as against the Town of Winchester and the complaint dismissed. Gannett is free to seek an injunction in state court against the criminal proceeding currently pending against it and against future criminal proceedings. *Kenyon v. City of Chicopee,* 320 Mass. 528, 70 N.E.2d 241 (1946); *see also Norcisa v. Board of Selectmen of Provincetown,* 368 Mass. 161, 166–168, 330 N.E.2d 830 (1975); *Dunigan Enterprises, Inc. v. District Attorney for the Northern District,* 11 Mass. App. 254, ——, 1981 Mass.App.Ct.Adv.Sh. 192, 195, 415 N.E.2d 251. The Court recognizes that the Town has repeatedly expressed its intention to seize the newsracks immediately if and when the injunction should be lifted. But Mass.R.Civ.P. 65 permits Gannett to seek the same relief in state court, including a temporary restraining order, it has sought here, while avoid-

---

2. After the Town filed its original application for complaint on September 12, 1983, it filed five additional applications for complaint dated October 11, 1983, one for each newsrack Gannett had placed in the Town.

ing unnecessary federal interference in the state's criminal proceedings.[3]

Because the record contains no showing that either Norwood or Randolph has filed a criminal action against Gannett or intends to file one, the *Younger* doctrine does not prevent this Court's reaching the merits of Gannett's suits against them.

*Merits*

■ Newspapers are entitled to full First Amendment protection, despite the fact they are sold commercially. *New York Times v. Sullivan,* 376 U.S. 254, 266, 84 S.Ct. 710, 718, 11 L.Ed.2d 686 (1964). The First Amendment protects the distribution and circulation of newspapers. "Liberty of circulating is as essential to [the freedom of the press] as liberty of publishing; indeed, without the circulation, the publication would be of little value." *Lovell v. Griffin,* 303 U.S. 444, 452, 58 S.Ct. 666, 669, 82 L.Ed. 949 (1938); *see also Miller Newspapers, Inc. v. City of Keene,* 546 F.Supp. 831, 833 (D.N.H.1982); *Philadelphia Newspapers, Inc. v. Borough Council, Mayor, Manager and Director of Public Works of the Borough of Swarthmore,* 381 F.Supp. 228, 240 (E.D.Pa.1974).

■ The freedom of the press guarantees freedom from the licensor. *Lovell v. Griffin,* 303 U.S. 444, 451, 58 S.Ct. 666, 668, 82 L.Ed. 949 (1938). "[A]n ordinance which ... makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms." *Staub v. City of Baxley,* 355 U.S. 313, 322, 78 S.Ct. 277, 282, 2 L.Ed.2d 302 (1958). A municipality may impose reasonable time, place and manner restrictions on sale and distribution of newspapers, but only "by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms." *Village of Schaumburg v. Citi-*

*zens for a Better Environment,* 444 U.S. 620, 637, 100 S.Ct. 826, 836, 63 L.Ed.2d 73 (1980).

Speech and expressive conduct on streets and public ways deserve special protection. "Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Carey v. Brown,* 447 U.S. 455, 460, 100 S.Ct. 2286, 2289, 65 L.Ed.2d 263 (1980), *quoting Hague v. CIO,* 307 U.S. 496, 515, 59 S.Ct. 954, 963, 83 L.Ed. 1423 (1939).

■ The fact that the newsracks are entitled to full First Amendment protection, coupled with their use in a public forum, requires that this Court be especially certain that any regulation of the newsracks is precise and narrowly drawn. *Accord Southern New Jersey Newspapers, Inc. v. State of New Jersey,* 542 F.Supp. 173, 183 (D.N.J.1982) (and cases cited therein). By contrast, Norwood and Randolph rely on no narrowly drawn statute, ordinance or by-law to regulate newsracks in the towns. Instead, they rely only on their general by-laws prohibiting use of the towns' streets and public ways for advertising or selling merchandise without a license or permit from the boards of selectmen. The by-laws contain no concrete standards whatsoever to guide or limit the discretion of town officials.

Norwood relies in addition on M.G.L. c. 93D, which regulates outdoor advertising "within six hundred and sixty feet of the nearest edge of the right-of-way and visible from the main travelled way of a highway in the interstate or primary [highway] systems." M.G.L. c. 93D, § 2. Even if Chapter 93D applies to the newsracks in this case—which is doubtful—it does not purport to grant the town's board of selectmen the right or duty to issue or deny permits to advertisers, or to remove advertising

---

**3.** This Court, of course, expresses no opinion on the merits of either the state criminal proceed-

ing or any future state litigation between the parties.

erected in violation of the Chapter. The statute simply permits "any city or town or any officer thereof" to petition the Supreme Judicial or Superior Courts to enjoin violations of the statute. *Id.* § 5.

█ Because the by-laws of Norwood and Randolph vest virtually unbridled discretion in town officials to grant or deny permit requests for placement of newsracks within the towns, they are unconstitutional and void for vagueness as the towns have sought to enforce them against Gannett.

The Court recognizes that the towns have a substantial interest in the safety and convenience of their residents, *Kovacs v. Cooper,* 336 U.S. 77, 81–83, 69 S.Ct. 448, 450–451, 93 L.Ed. 513 (1949); *Saia v. New York,* 334 U.S. 558, 562, 68 S.Ct. 1148, 1150, 92 L.Ed. 1574 (1948), and the aesthetics or appearance of the towns, *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 507–08, 101 S.Ct. 2882, 2892, 69 L.Ed.2d 800 (1981). But this Court believes that the towns can serve those interests by narrowly drawn statutes which do not constitute prior restraints of the press nor set up town officials as censors.

Order accordingly.

GANNETT SATELLITE INFORMATION NETWORK, INC.,
                    Plaintiff,

v.

TOWN OF WINCHESTER,
                    Defendant.

ORDER

In accordance with memorandum filed this date, it is ORDERED:

1. The preliminary injunction issued by this Court on October 17, 1983, is hereby dissolved.

2. Complaint dismissed without prejudice.

GANNETT SATELLITE INFORMATION NETWORK, INC.,
                    Plaintiff,

v.

TOWN OF NORWOOD,
                    Defendant.

ORDER

In accordance with memorandum filed this date, it is ORDERED:

1. Plaintiff's motion for summary judgment is allowed.

2. Application of Article XII, Section 31 of the general by-laws of the Town of Norwood to placement of USA TODAY newsracks within the Town is declared unconstitutional in violation of the First and Fourteenth Amendments to the United States Constitution.

3. Defendant, its officers, agents, servants, employees and all persons acting in concert or participation with the defendant or with any of the foregoing are permanently enjoined from applying Article XII, Section 31 of the general by-laws of the Town of Norwood so as to:

(a) prevent plaintiff from placing USA TODAY newsracks in public areas of the Town of Norwood;

(b) remove, tamper with, limit, impose fees or conditions upon, or in any way interfere with plaintiff's placing USA TODAY newsracks in public areas of the Town of Norwood;

(c) condition plaintiff's placing USA TODAY newsracks in public areas of the Town of Norwood upon the obtaining of a permit or license.

GANNETT SATELLITE INFORMATION NETWORK, INC.,
                    Plaintiff,

v.

TOWN OF RANDOLPH,
                    Defendant.

ORDER

In accordance with memorandum filed this date, it is ORDERED:

1. Plaintiff's motion for summary judgment is allowed.

2. Application of the following by-laws of the Town of Randolph to placement of USA TODAY newsracks within the Town is declared unconstitutional in violation of the First and Fourteenth Amendments to the United States Constitution:

**116**

(a) Section 14 of Article 16, 1931 Town Meeting;

(b) Section 18 of Article 86, 1965 Town Meeting;

(c) Section 2 of Article 99, 1973 Town Meeting.

3. Defendant, its officers, agents, servants, employees and all persons acting in concert or participation with the defendant or with any of the foregoing are permanently enjoined from applying the aforementioned by-laws so as to:

(a) prevent plaintiff from placing USA TODAY newsracks in public areas of the Town of Randolph;

(b) remove, tamper with, limit, impose fees or conditions upon, or in any way interfere with plaintiff's placing USA TODAY newsracks in public areas of the Town of Randolph;

(c) condition plaintiff's placing USA TODAY newsracks in public areas of the Town of Randolph upon the obtaining of a permit or license.