## City of Burlington v. New York Times Company

[532 A.2d 562]

No. 86-014

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes,**[1] **JJ.**

Opinion Filed July 24, 1987

---

[1] Justice Hayes was present for oral argument but did not participate in this decision.

*John L. Franco*, Assistant City Attorney, Burlington, for Plaintiff-Appellant.

*William B. Gray* and *John H. Fitzhugh* of *Sheehey, Brue & Gray*, Burlington, and *Kenneth A. Richieri*, The New York Times Co., New York, New York, for Defendant-Appellee.

**Allen, C.J.** The City of Burlington appeals from the grant of a motion to dismiss an action brought by the City to collect a $5.00 per week fee to place newspaper vending machines on city sidewalks. The trial court declared the ordinance unconstitutionally overbroad and void for vagueness in violation of the First Amendment. We affirm.

In August, 1984, the New York Times Company (Times) placed seven automatic coin-operated newspaper vending machines along public streets in Burlington. Shortly thereafter, the Times was informed by City officials that the placement violated § 27-31 of the Burlington Code of Ordinances, which reads as follows:

> (a) It shall be unlawful for any person, firm or corporation to temporarily obstruct a street or sidewalk without first obtaining a written permit therefor from the superintendent of streets, except as hereinafter provided.
>
> Within the Church Street Marketplace District on any portion of Church Street, College Street, Bank Street, or Cherry Street used for vehicular traffic, the superintendent of streets shall not issue a permit until the Administrator of the Church Street Marketplace District Commission approves of such obstruction. In the inner two (2) pedestrian blocks of the marketplace district, the marketplace district commission administrator shall have exclusive jurisdiction to issue permits.
>
> (b) "Obstruction" as used in this section includes, but is not limited to, temporary obstacles and/or barriers which hinder the free and safe passage of pedestrians and vehicles, or which may receive injury or damage, if run over or into by pedestrian or vehicle traffic.

On December 21, 1984, the City brought a civil action against the Times seeking a $5.00 per week per machine fee under the ordi-

nance.[2] Defendant filed a motion to dismiss, arguing that the ordinance was unconstitutionally void for vagueness and overbroad under the the First Amendment to the United States Constitution. Defendant contended that the requirement of a permit and a fee was an unconstitutional prior restraint on the dissemination of news, and improperly vested the power to grant or deny a permit in the unchecked discretion of the Superintendent of Streets and the Administrator of the Marketplace, without adequate guidelines or standards for decision. Defendant also argued that the ordinance did not contain adequate procedural due process protections for review of a permit denial, relying on the First, Fifth, and Fourteenth Amendments to the United States Constitution.

At hearing, the trial court agreed with defendant and granted its motion to dismiss on grounds that the ordinance was unconstitutionally overbroad and void for vagueness.

■ Freedom of speech and freedom of the press are protected by the First Amendment from infringement by Congress, and are among those fundamental rights protected from state action by the Fourteenth Amendment. *Gitlow* v. *New York*, 268 U.S. 652, 666 (1925). The First Amendment protects both publication and distribution of newspapers. *Lovell* v. *City of Griffin*, 303 U.S. 444, 451-52 (1938). " 'Liberty of circulating is as essential to [freedom of the press] as liberty of publishing; indeed, without the circulation, the publication would be of little value.' " *Id*. at 452 (quoting *Ex parte Jackson*, 96 U.S. 727, 733 (1877)).

■ ■ First Amendment protection for publication and distribution of newspapers does not, however, exempt newspapers from all forms of regulation. Time, place, and manner restrictions are permissible as long as the restrictions " 'are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.' " *United States* v. *Grace*, 461 U.S. 171, 177 (1983) (quoting *Perry Education Assn.* v. *Perry Local Educators' Assn.*, 460 U.S. 37, 45 (1983)); *Grayned* v. *City of Rockford*, 408 U.S. 104, 115 (1972). When dealing with a public forum, such as the sidewalks upon which the Times placed its vending machines, the ability to per-

[2] Section 27-32 of the Burlington Code of Ordinances provides in pertinent part:
(b) The fee for a permit for a week or part thereof shall be five dollars ($5.00).

missibly restrict expressive conduct is limited. *Grace*, 461 U.S. at 177, 179; see also *Perry Education Assn.*, 460 U.S. at 45-46 (extent to which government can control access depends on nature of public forum). "In order to qualify as narrowly tailored, a content neutral ordinance must avoid vesting city officials with discretion to grant or deny licenses . . . ." *Miami Herald Publishing Co.* v. *City of Hallandale*, 734 F.2d 666, 673 (11th Cir. 1984); see also *Shuttlesworth* v. *City of Birmingham*, 394 U.S. 147, 150-53 (1969) (" 'ordinance which . . . makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official . . . is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.' ") *Id.* at 151 (quoting *Staub* v. *City of Baxley*, 355 U.S. 313, 322 (1958)). Arbitrary discretion vested in governmental authority is inherently inconsistent with a valid time, place and manner regulation because such discretion could potentially suppress particular points of view by discriminating against licensees on the basis of what the licensee intends to say. *Heffron* v. *International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 649 (1981).

These First Amendment protections apply with equal force to newsracks on public sidewalks. *Miami Herald*, 734 F.2d at 673; *Gannett Satellite Information Network, Inc.* v. *Town of Norwood*, 579 F. Supp. 108, 114 (D. Mass. 1984); *Miller Newspapers, Inc.* v. *City of Keene*, 546 F. Supp. 831, 833-34 (D.N.H. 1982); *Southern New Jersey Newspapers, Inc.* v. *State of New Jersey Department of Transportation*, 542 F. Supp. 173, 182-83 (D.N.J. 1982). In *Gannett Satellite*, the town of Norwood relied on its general bylaws, prohibiting use of the town's streets and public ways for advertising or selling merchandise, to regulate newsracks:

> No person shall, *without the authority of the Board of Selectmen*, place, paint or affix any sign, picture, political poster or advertising material of any kind upon any post, tree, sign, rock or other fixed place or object within the limits of any public way in the Town.

579 F. Supp. at 111 (emphasis added). Language at the root of the constitutional argument in the Norwood ordinance, "without the authority of the Board of Selectmen," is similar to that found in the Burlington ordinance, "without first obtaining a written permit therefor from the superintendent of streets . . . ."

■ The court in *Gannett Satellite* concluded that the bylaws relied upon by the town were unconstitutional because they were not narrowly drawn to regulate newsracks nor did they contain definite standards limiting the discretion of town officials. 579 F. Supp. at 115. The Burlington ordinance, similarly, is not narrowly drawn nor does it define standards any clearer or more definite than those condemned in *Gannett Satellite*. Burlington's ordinance leaves the task of setting standards entirely within the discretion of the Superintendent of Streets or the Administrator of the Church Street Marketplace District Commission. " 'When a city allows an official to ban [a means of communication] in his uncontrolled discretion, it sanctions a device for suppression of free communication of ideas.' " *Miller Newspapers*, 546 F. Supp. at 835 (quoting *Saia* v. *New York*, 334 U.S. 558, 562 (1948)). The City may well have legitimate concerns about placing obstructions in the public rights-of-way that might impede its use, result in undue risk of harm to passersby, or create undue congestion or inconvenience. Such concerns are not beyond the power of the City to address in a narrowly drawn ordinance in a reasonable and administrable manner. See, e.g., *Philadelphia Newspapers, Inc.* v. *Borough Council, Mayor, Manager & Director of Public Works of Borough of Swarthmore*, 381 F. Supp. 228, 242-44 (E.D. Pa. 1974).

The City argues that the trial court erred by applying the facial overbreadth doctrine. It contends that the doctrine should not be invoked when a limiting construction can be placed on the challenged ordinance, relying on *Broadrick* v. *Oklahoma*, 413 U.S. 601, 613 (1973). *Broadrick* involved a challenge to state law proscribing political activity by state employees. The Supreme Court held that the challenged statute was constitutional, that any potential overbreadth could be cured through case-by-case application, and stressed the importance of a "limiting construction" on potentially overbroad language. *Id.* at 613-16.

■ The message of *Broadrick* is not applicable to the present case. The statute in *Broadrick* gave adequate warnings of what activities were proscribed and set out explicit standards for those who were to apply it. *Id.* at 607. The Burlington Code of Ordinances sections under review accomplish neither. Furthermore, facial overbreadth claims have been entertained where statutes purporting to regulate the time, place, and manner of expressive conduct require official approval under laws that delegate

standardless discretion to local officials. *Id.* at 612-13. The City here seeks to enforce its ordinance through "an order abating further unlawful obstruction of the street." As such, enforcement of the ordinance would directly affect the exercise of First Amendment rights by defendant. The assertion of First Amendment rights by a newspaper is not, as the City maintains, the assertion of a vicarious right of its readers. It is the assertion of a fundamental personal right. See *Lovell* v. *City of Griffin*, 303 U.S. at 450. If upheld, the City's ordinance would subject defendant to direct licensure at the unfettered discretion of a city official. Under these circumstances, no "limiting construction" is possible. *Broadrick*, 413 U.S. at 613.

■ If an enactment has the practical effect of limiting free expression, it must be narrowly drawn. *Schad* v. *Borough of Mt. Ephraim*, 452 U.S. 61, 70-71, 75 (1981). The argument that the ordinance "places no restrictions whatever on the time, place, manner or number of newsracks which are to be displayed by the Times" is without merit. The ordinance leaves the City authorities with unlimited discretion to grant or refuse a permit and places those subject to the ordinance in the position of having to contend with the City on a case-by-case basis, without the benefit of standards or guidelines. This the City may not do.

The City next argues that even if the ordinance is facially overbroad, it is rendered reasonable when read together with overriding state law. *Rutland Cable T.V., Inc.* v. *City of Rutland*, 122 Vt. 162, 165, 166 A.2d 191, 193 (1960). The City does not, however, indicate which "well established principles of Vermont municipal law" are to be read into its ordinance to narrow and save it. Furthermore, we are unaware of specific legal principles that fit plaintiff's description. All municipal ordinances in Vermont are limited by governing statutory enactments. *Hinesburg Sand & Gravel Co.* v. *Town of Hinesburg*, 135 Vt. 484, 485-86, 380 A.2d 64, 66 (1977). Plaintiff's argument is based, not on the language of its ordinance, but rather on an unsupported assertion that the City intended its enactment to incorporate unspecified statutory law.

■ Plaintiff finally argues that even if the permit provision of its ordinance should be struck down because of vagueness and overbreadth, the fee provision ought to be severed and declared valid. This Court will, in an appropriate case, sever invalid portions of an enactment, leaving valid portions in full force. See

*Bagley* v. *Vermont Department of Taxes*, 146 Vt. 120, 125-26, 500 A.2d 223, 226 (1985). However, only those portions of a statute or ordinance which fully operate as law apart from the portion declared invalid may be severed. *State* v. *Scampini*, 77 Vt. 92, 121-22, 59 A. 201, 211 (1904). In the present case, the fee provision of the ordinance, § 27-32, relates directly to a permit program which we have concluded is standardless and which confers excessively broad authority on City officials. The fee provision and the invalid permit program are integrally related. The fee provision of § 27-32 is not severable and must fall with the permit program to which it is tied.

Because §§ 27-31 and 27-32 are invalid enactments under the First Amendment, it is unnecessary to address plaintiff's argument concerning the validity of fees or taxes that affect First Amendment freedom of the press.

*Affirmed.*